AO 243 (Rev. 2/95)

## PETITION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| UNITED STATES DISTRICT COURT | District Massachusetts, Boston | |
|---|---|---|
| Name of Movant Albert Gonzalez | Prisoner No. 25702-050 | Case No. 1:08-cr-10223-PBS 1:09-cr-10262-PBS |
| Place of Confinement F.C.I. Milan, PO Box 1000, MIlan, Michigan 48160 | | |

UNITED STATES OF AMERICA             V.    ALBERT GONZALEZ

                                                    (name under which convicted)

### MOTION

1. Name and location of court which entered the judgment of conviction under attack    U.S. District Court

   Boston, Massachusetts- Judge Saris

2. Date of judgment of conviction    3-25-2010

3. Length of sentence    240 months

4. Nature of offense involved (all counts)    (Ct1) 18:371 Conspiracy; (Ct2-6) 18:1030 Damage

   to Computer Systems; (Ct7-10) 18:1343 Wire Fraud; (Ct11-15) 18:1029 Access Device

   Fraud; (Ct16-19) 18: 1028A Aggravated Identity Theft

   (Ct1) 18:1349 Conspiracy to commit Wire Fraud

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐    No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐    No ☒

AO 243 (Rev. 2/95)

9.  If you did appeal, answer the following:

(a)  Name of court _____N/A_____

(b)  Result _____N/A_____

(c)  Date of result _____N/A_____

10.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?

Yes ☐          No ☒

11.  If your answer to 10 was "yes," give the following information:

(a)  (1)  Name of court _____N/A_____

(2)  Nature of proceeding _____N/A_____

_____

(3)  Grounds raised _____N/A_____

_____

_____

_____

_____

(4)  Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐          No ☐

(5)  Result _____N/A_____

(6)  Date of result _____N/A_____

(b)  As to any second petition, application or motion give the same information:

(1)  Name of court _____N/A_____

(2)  Nature of proceeding _____N/A_____

_____

(3)  Grounds raised _____N/A_____

_____

_____

_____

AO 243 (Rev. 2/95)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
     Yes ☐         No ☐

(5) Result _____ N/A _____

(6) Date of result  N/A _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
    (1) First petition, etc.                Yes ☐         No ☐
    (2) Second petition, etc.               Yes ☐         No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

                                    N/A _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.

    Caution:    If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

    For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

    (a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

    (b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self–incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(h) Denial of right of appeal.

A.    Ground one:  __I did not knowingly or voluntarily enter a guilty plea.__ 

Supporting FACTS (state *briefly* without citing cases or law)

See additional pages for supporting facts for ground one.

B.    Ground two:  Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law)

See additional pages for supporting facts for ground two

C.    Ground three:  Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law)

See additional pages for supporting facts for ground three

AO 243 (Rev. 2/95)

D.    Ground four:   Counsel was ineffective for failing to file Notice of
Appeal after I requested him to do so.

Supporting FACTS (state *briefly* without citing cases or law)    Immediately after sentencing

I told my attorneys Mr Palomino and Mr Weinberg to file a Notice

of Appeal they told me they would file a Notice of Appeal. Without my

knowledge or consent they decided not to file a Notice of Appeal.

I was prejudiced by my attorney's failure to file a notice of appeal

I was deprived of the benefit of the Court of Appeals determination

if certain issues in my case had merit. I request that I be granted

an opportunity exercise my right to a direct appeal.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

Issues raised are best brought in a collateral attack under 28 U.S.C.

§2255

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
   Yes ☐    No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a) At preliminary hearing   George A. Farkas, 32 Court St., Suite 408, Brooklyn, NY
11201

(b) At arraignment and plea   George A. Farkas (Arraignment); Martin Weinberg, 20 Park
Plaza, Ste.1000, Boston, MA 02116; Rene Palomino, 46 NE 6th St., Miami, Fl 33132 (Plea)

(c) At trial _____

(d) At sentencing   Martin Weinberg and Rene Palomino

**GROUND NUMBER ONE:**      I did not knowingly and voluntarily
enter a guilty plea.

**FACTS THAT SUPPORT GROUND NUMBER ONE:**

The Government indicted me in three different districts.
One indictment was returned in the Eastern District of New York,
another indictment was returned in the District of Massachusetts
(Boston Division), and the remaining indictment was returned in
the District of New Jersey.

All three of the indictments were based on an ongoing
conspiracy to commit wire fraud, access device fraud, aggravated
identity theft, damage to computer systems, and conspiracy to
commit wire fraud.

My attorney, Mr. Palomino advised me that pursuant to Rule
20 of the Fed.R.Crim.P. that all three of the cases now in
different districts could be transferred to the same district for
a resolution of the charges.

Mr. Palomino advised me that the government prosecutors
would agree to transfer two of the cases to the District of
Massachusetts if I would agree to plead guilty to all three cases.
I asked Mr. Palomino what benefit I would receive by transferring
all the cases to one district. Mr. Palomino told me that if I
agreed to the Rule 20 transfer, that all three cases would be in
one district, before one judge and I would receive one sentence.
Based on Mr. Palomino's promise- that if I agreed to the Rule 20
and entered a guilty plea to all three cases, all three cases

(7)

would be before one judge and I would receive one sentence- I was induced to agree to the Rule 20 transfer and plead guilty to all three cases. Mr. Palomino told me the government would make this a part of the plea agreement.

On August 25, 2009, I signed a plea agreement offered to me by Stephen P. Heymann, Assistant U.S. Attorney, for the District of Massachusetts. Paragraph 5 of the plea agreement states in relevant part:

> "The U.S. Attorney further agrees to join in a motion to have any transferred case sentenced before the same judge as is presently hearing this matter. The U.S. Attorney also agrees to join in a request that the sentencing in any transferred case take place at the same hearing as the sentencing in this case..."

Based on the above agreement, I was induced to accept the plea agreement.

When my attorney and Mr. Heymann AUSA advised me that all three of my cases would be resolved before the same judge and that all sentencing would take place at the same sentencing hearing, apparently they did not know that their offered agreement could not be fulfilled. Mr. Palomino and Mr. Heymann filed a joint motion for assignment of case and scheduling of Rule 11 hearing on September 3, 2009, wherein the parties requested "It is in the interest of justice that a single judge sentence the defendant for the related conduct charged in the two cases. Because this court already has the instant case assigned to it, the parties request that the court direct that the Clerk of the Court assign to her for plea and disposition United States v. Gonzalez, No.

(8)

08-160, when it arrives from the Eastern District of New York."
On September 8, 2009, the District Court Judge Saris entered an
order denying joint motion for assignment of the case and Rule 11
hearing as to Albert Gonzalez. "Denied. The rules do not permit
special assignment in criminal cases."

Based on Judge Saris' denial of the joint motion for
assignment of case and Rule 11 hearing, the provisions of the
plea agreement offered to me and accepted could not be carried out.
Had I've known that all three of my cases would not have been
before one judge and one sentencing hearing, I would not have
accepted the governments plea agreements, I would not have agreed
to a Rule 20 transfer and I would not have entered a guilty plea to
all three cases. Both my lawyer and the government prosecutor
mislead me into believing that all three of my cases would be
resolved by one judge and one sentencing hearing. I gained
absolutely nothing by accepting the plea agreement, agreeing to a
Rule 20 transfer, and pleading guilty. Because I relied on the
promises of my attorney and the government that could not be
carried out, I did not knowingly and voluntarily enter into the
plea agreement, the Rule 20 agreement, or guilty plea. I request
that I be allowed to withdraw from the plea agreement and the
Rule 20 agreement and to withdraw my guilty plea and my three
cases be transferred back to their respective districts.

Part of the prejudice resulting from the three cases not
being resolved by one judge is that I have to file collateral
attacks in two different cases, before two different judges, and

then if relief is not granted I have to file two separate appeals.
I am being subjected to piecemeal litigation. If I prevail on one
post conviction attack before one judge and lose on post conviction
or appeal before the other judge, then I lose in both cases
resulting in a hollow victory. The United States Marshals Service
has placed a "Detainer" against me with the Bureau of Prisons to
hold me in case I am successful on overturning the conviction on
one or two of my cases. If all of my cases were in one district
court before one Judge with one sentence there would be no need
for a Detainer to be place against me to hold me for another
court. The prejudice resulting from the Detainer is that the
Bureau of Prisons uses the Detainer to prevent me from being able
to participate in certain programs that would be beneficial to my
rehabilitation efforts during my incarceration. Because of the
Detainer I cannot participate in the Court recommended Residential
Drug Abuse Program and earn the 1-year off my sentence for
successfully completing the drug program. As long as I have the
Detainer I will be unable to transfer to a Halfway House (RRC)
prior to my release. The Detainer has increased my Security Level
which is used to determine my classification within the Bureau of
Prisons.

**GROUND NUMBER TWO:     My guilty plea was not knowingly and
voluntarily entered because I did not know I had an available
defense to all the charges under "Public Authority." My trial
counsel was ineffective for failing to present Public Authority
Defense.**

**FACTS THAT SUPPORT GROUND NUMBER TWO:**

If a person is acting under the actual or believed exercise
of public authority on behalf of a law enforcement agency he has
a public authority defense against any illegal conduct arising
from his actions.

When I committed the illegal acts to which I plead guilty I
believed I was acting under the grant of authority from Agents of
the United States Secret Service to engage in the conduct that
were violations of the laws of the United States, which included
Conspiracy, Wire Fraud, Access Device Fraud, Conspiracy To Commit
Wire Fraud and Aggrevated Identity Theft. (See Indictments).

The facts that support my claim of a public authority defense
were never revealed during the proceedings of my case and exist
outside the motions, files and records of the case. The following
is a narrative of the unrevealed facts that led me to believe that
I was acting as an Agent of the Secret Service and authorized by
the Secret Service to conduct the illegal acts to which I plead
guilty in the United States District Courts for the District of
Massachusetts.

In 2003, after my arrest for access device fraud, Agents of

the United States Secret Service convinced me to become a
Confidential Informant for the Secret Service. I reluctantly
agreed to become a Confidential Informant for the Secret Service.
I was provided with a CI Number and indocturinated as to what was
expected of me as a CI for the Secret Service. An Agent by the
name of David Esposito was assigned as my handler. Another Agent
named Steve Ward who was Agent Esposito's supervisor also assisted
in handeling me. Eventually Agent Ward became my sole handler. I
also worked with other Secret Service Agents on numerous
investigation. Because of my skills and information I possessed
about computers and hacking the Agents were anxious to work with
me and learn what I know about hacking. Apparently I made quite an
impression on the Agents I was working with and they took me into
their confidence and trusted me. They treated me like one of their
own and I began to feel like part of the Secret Service Agency. As
I provided invaluable assistance on a number of cases that resulted
in indictments and convictions the trust and bond between me and
the Agents grew stronger. I was allowed to sit in on confidential
briefings and asked my opinion on issues. I was provided with
access to highly confidential information. I was asked to commit
acts I knew were illegal but I complied in order to please the
Agents who had shown me such respect and friendship. When I
commented on something being illegal they told me "don't worry we
got your back." At that point I would have done anything they asked
me to do. I was overwhelmed and felt like I could do no wrong.

The Agents had me infiltrating chat rooms setting people up and then the Agents would bust them. A lot of arrests were made because of the work I was doing. I was taken to different parts of the country to help with undercover operations. On one occasion I was taken to California for a week to help Agents there with an undercover operation that resulted in arrests and convictions. In 2003, I was taken to a military base in Cavens Point, NJ and assisted in a "sting" named "Operation Firewall" that resulted in the arrest and conviction of more than 20 persons involved in computer crimes.

When the days work was done the Agents took me bike riding with them. We went bar hopping together and partying together. They provided me with a salary of $1200 a month and occasionally provided me with additional cash to help cover my expenses. I was instructed not to say anything about the cash payments as that money was not supposed to exist. They gave me my own computer to work with but eventually asked for it back. They told me to continue my game in an effort to make contact with more hackers involved in computer crimes. They told me do what you have to do just try not to get caught. All the time I was educating the Agents as to hacking methods and computer crimes. They treated me like . one of their own and did everything but give me a gun and a badge. On one occasion even the possibility of a gun for protection was discussed if the need ever arose.

In 2004 and 2005 my handler Agent Steve Ward escorted me to

Secret Service Headquarters in Washington D.C. to give
presentations on the Evolution of Malicious Software and 0-day
Vulnerabilities. These presentations were attended by at least 50
Secret Service Agents and a number of persons who were not Agents.
While in Washington D.C. the USSS, Criminal Intelligence Section
(CIS) conducted confidential meetings with me to obtain from me
information and methods of intelligence gathering via computer.
All of this inflated my ego and made me feel very important and
made me feel like I was really a part of the Secret Service with
the backing and support of that GOvernment Agency. One day I was
unknown and nothing and the next day I am being hailed as a genius
and giving presentations to Secret Service Agents in Washington
D.C. All of this was mind boggling for me.

     At one point Secret Service Agents took me to Chicago, Illinois
to give Secret Service Agents there technical assistance in
setting up a "honeypot." A honeypot is used utilized to observe
hackers committing computer fraud in order to learn how the hackers
operate and track their origins. During the Chicago trip the Agents
had me attend a Information Security Conference hosted by ABM
Amro LaSalle Bank to obsrve security measures being discussed.

     In 2003, before "Operation Firewall" and before I became a
Confidential Informant, I owed a Russian "carder" $5,000 and he was
pressing me for the money. I told Agent Steve Ward that I needed
$5,000 to pay the RUssian or I would loose credability with him
and others. Agent Ward made it clear they were not going to pay

(14)

the $5,000 debit and that I would have to take care of it myself.
I told Agent Ward I did not have the money to take care of the
debit. Agent Ward told me "go do your thing and pay the debit,
just don't get caught." I did my thing and payed off the $5,000
debit. Later Agent Ward asked me if I took care of the debt, I
told him yes.

In 2003, my parents were very nervous about my involvement
with the Secret Service Agents. An Agent by the name of Robert
Villanueva who was of Cuban descent as my parents called my
parents and arranged a meeting for Agents Steve Ward and David
Esposito with my parents to discuss my involvement with the
Secret Service. At the meeting with my parents the Agents told my
parents that my knowledge and skills with computers was very
important to the Secret Service and that I had a future with
them depending on me. (SEE AFFIDAVIT OF MOTHER EXHIBIT A)

After I was issued my Confidential Informant number I was told
to take a bigger role in obtaining information concerning
international cyber crime. To seek out persons in other countries
who were involved in cyber crime. We discussed methods and ways of
doing this. After I made contact with persons in other countries
who were involved with cyber crime it became apparent that I would
have to participate in illegal activity and give them something
in order to gain their confidence and trust. I contacted persons
here in the United States who I had been involved with prior to
becoming a Confidential Informant. Through them I made contacts

(15)

with other persons involved in cyber crime and furthered my reputation as someone who could be trusted. In order to establish trust I had to become involved in the same illegal activities they were involved in. I had to become involved in order to be accepted into the operation. During this time the Agents were encouraging me to gather intelligence. They explained the difference between intelligence that could be used to establish probable cause legally in court and intelligence that could not legally be used in court. Some of the intelligence gathering activity I was conducting occured during Operation FIrewall. After Operation Firewall was completed I was moved to Miami, Florida and was instructed to continue my operation from there. At all time my handler Agent Steve Ward and higher-ups in CID/CIS knew exactly what I had been instructed to do and what I was doing. I firmly believed I was authorized to engage in the cyber crimes I was participating in in order to gather intelligence on National and International cyber criminals and I was doing my job to the best of my abilities. When I was arrested and charged with numerous offenses against the United States I was shocked and did not understand what was happening. I was expecting Secret Service to come and take custody of me and squash the charges. But that never happened. I had been instructed by Agent Steve Ward that if I ever got arrested by authorities not to say anything but request that He be called and made aware of my arrest. But at the time of my arrest Steve Ward was no longer a Secret Service Agent.

When I was arrested by the Secret Service I was placed in isolation in the SPecial Housing Unit (SHU) at the Federal Detention Center in Miami, FLorida for protection due to my status as a Confidential Informant for the Secret Service.

I retained attorney Rene Palomino to represent me in this case. I explained my status as a Confidential Informant working for the Secret Service and explained about Operation Firewall and my involvement in that operation. I even explained to Mr. Palomino about an incident where a Secret Service employee out of the Washington D.C. headquarters was fraudulently using my CI Number to steal confidential informant funds for her own personal use. The person was fired from the Secret Service and criminally prosecuted. I do not remember everything I told Mr. Palomino about my involvement as a CI for the Secret Service. But it was enough to alert him to the fact that he should have conducted a further investigation of a Public Authority Defense. I did not know that such a defense of Public Authority existed. I did not know that due to the Secret Service Agents directing me to participate in cyber crime that I had a Public Authority defense available to me against the charges.

The Government obtained the services of Mark J. Mills, JD, MD. to conduct a psychiatric evaluation of me. During my evaluation session with Dr. Mills I tried to explain to him how the Secret Service Agents had authorized me to commit the criminal acts I had engaged in in order to gather intelligence and infiltrate

(17)

cyber crime operations as a participant. Dr. Mills told me we
could not discuss the charges or why I committed the crimes.
(See Exhibit B, letter from Mark J. Mills M.D.)

During the time I was giving a proffer my attorney Martin
Weinberg who was lead counsel on the Massachusetts case told me he
overheard the prosecutors and Agents talking about giving me
immunity. Mr. Weinberg told me immunity was on the table but
that he didnt think they would give it to me. Mr. Weinberg
asked me why would they give you immunity. I told him because they
know the Agents instructed me to commit the acts that I am now
being charged with and they know what I did was part of the
operation named "Shadow Ops" being conducted out of the Miami field
office.

The Agents who arrested me were not the Agents who were
conducting Shadow Ops operations. I tried to tell the arresting
Agents that I was one of the Secret Service's Confidential
Informants. I gave them my number and told them I was involved in
Shadow Ops operation. I asked them to call my handlers and verify
that I was an active registered CI engaged in intelligence
gathering for the Secret Service. They told me don't worry we will
sort it all out we are just doing what we have been told to do so
just relax we know who you are we just don't know whats going on
at this point.

I still believe that the actions I took in engaging in various
cyber crimes were authorized by Agents of the Secret Service. I

still believe that I was acting on behalf of the United States Secret Service and that I was authorized and directed to engage in the conduct I committed as part of my assignment to gather intelligence and seek out international cyber criminals.

I now know and understand that I have been used as a scape goat to cover someone's mistakes. If I had known that my case presented a "Public Authority" defense I would never have entered a guilty plea to the charges unjustly brought against me.

I request that I be allowed to withdraw my guilty plea in all three cases that I was prosecuted in based on the foregoing claim and facts. I believe I am actually innocent of the charges brought against me because I was authorized by the Secret Service to commit the acts that constitute the charges.

**GROUND NUMBER THREE:**      Trial counsel was ineffective for failing
to file motion to suppress evidence obtained by way of torture.
**FACTS THAT SUPPORT GROUND NUMBER THREE:**

On July 25, 2007, the Turkish National Police seized a
Lamborghini laptop computer from the hotel room of Maksym
Yastremskiy while Yastremskiy was absent from his hotel room.
United States Secret Service Agents (USSS) accompanied the Turkish
National Police (TNP) to Yastremskiy's hotel room in Antalya,
Turkey. The USSS Agents who were working in concert with the TNP,
were waiting across the hall in an unoccupied room. The TNP
brought Yastremskiy's laptop computer to the USSS Agents who took
photographs of the logon screen which displayed the name "MARS."

On July 26, 2007, at the direction of the USSS Agents, the
TNP arrested Yastremskiy pursuant to a provisional arrest warrant
issued in the Southern District of California[*]. Upon seizing
Yastremskiy's laptop computer the TNP and USSS Agents discovered
that Yastremskiy's laptop contained "encrypted containers" that
could only be opened with a pass phrase. WIthout the pass phrase
the TNP or the USSS Agents could not open the encrypted containers.
Only Yastremskiy could provide the pass phrase. Under questioning
by USSS Agents, Yastremskiy refused to reveal the pass phrase
that would open the containers in his laptop. When it became
apparent that Yastremskiy was not going to reveal the pass phrase,
the Turkish National Police tortured and beat Yastremskiy until
he revealed the pass phrase necessary to open the containers. At

---
[*] / footnote
See Exhibit D, 2255 Motion, Arrest warrant issued by United
States District Court Southern District of California, for the
arrest of Maksym Yastremskiy.

first Yastremskiy gave the Turkish Police and USSS Agents a false
pass phrase which resulted in further torture and beatings by the
Turkish National Police until Yastremskiy was forced to reveal
the pass phrase that opened the containers in his laptop computer
now in the possession of the USSS Agents.[1]

Upon accessing the information contained in Yastremskiy's
containers, the USSS Agents discovered that the defendant Albert
Gonzalez was involved in Yastremskiy's cyber crime organization.[2]

Gonzalez's arrest and prosecution started as the results of
the information obtained from the encrypted containers in
Yastremskiy's laptop computer. WIthout the information retrieved
from Yastremskiy's laptop by the TNP and USSS Agents there would
be no case against Gonzalez. Prior to obtaining the information
from the encrypted containers through the torture and beating of
Yastremskiy, Albert Gonzalez's name and participation in
Yastremskiy's cyber crime organization was unknown to the USSS
Agents. Without the encrypted container information there was no
evidence of Gonzalez's connection to Yastremskiy or any cyber
crimes.

---

1 / footnote
     Subsequent to Yastremskiy's torture and beatings at the hands
of the Turkish National Police and USSS Agents, Yastremskiy suffers
from posttraumatic stress disorder (PTSD) and is still undergoing
psychiatric treatment for PTSD.

---

2 / footnote
     Due to a lack of communication the USSS Agents who investigated
Yastremskiy did not know that defendant Albert Gonzalez was a
Registered Confidential Informant working under cover for the United
States Secret Service out of the Miami, Florida field office and
gathering intelligence under and operation named "Shadow Ops" which
was formulated to combat international cyber crime.

## GONZALEZ HAD A DUE PROCESS RIGHT TO SEEK
## THE SUPPRESSION OF THE CONTENTS OF
## YASTREMSKIY'S LAPTOP COMPUTER

Due to the torture and beating of Maksym Yastremskiy and
the forced extraction of the pass phrase that allowed the TNP
and USSS Agents to open Yastremskiy's encrypted containers that
revealed evidence that identified Albert Gonzalez and linked him
to Yastremskiy's cyber crimes, Gonzalez has a due process right
under the FIrth Amendment of the United States Constitution to
seek suppression of the encrypted containers found in Yastremskiy's
laptop computer and other fruit of that illegal seizure.

## GONZALEZ'S TRIAL COUNSEL WAS INEFFECTIVE
## FOR FAILING TO FILE A MOTION TO
## SUPPRESS THE YASTREMSKIY EVIDENCE

On July 26, 2007, when the Turkish National Police and USSS
Agents arrested Yastremskiy in Antalya, Turkey, I was working out
of the Miami, Florida USSS field office in an undercover capacity
as a Confidential Informant in Operation Shadow Ops gathering
intelligence on persons committing international cyber crimes. I
was under the control of USSS Agent Steve Ward. I had been
gathering information on Maksym Yastremskiy's operations and
passing the information to Agent Steve Ward.

About a week after Yastremskiy's arrest, Agent Ward came to
me and invited me out to lunch. Over lunch Agent Ward congratulated
me and told me that the Turkish National Police and USSS Agents in
Turkey had arrested Yastremskiy and seized his laptop computer that
revealed evidence that would convict Yastremskiy and others and end

his international cyber crime organization. Agent Ward told me the
"Turks" had beat Yastremskiy's ass and made him give up the pass
phrase that allowed USSS Agents access to Yastremskiy's laptop
computer. When I was arrested by USSS Agents I had personal
knowledge that the Turkish National Police had tortured and beaten
Yastremskiy in order to forcefully extract the pass phrase from
Yastremskiy.

During consultation with my attorney's Rene Palomino and Martin
Weinberg I told them that my handler Agent Steve Ward had told me
that the "Turks" had beaten Yastremskiy and made him reveal the
pass phrase that allowed them to open the encrypted containers in
Yastremskiy's laptop computer and supplied the USSS Agents in
Turkey with the pass phrase which opened Yastremskiy's encrypted
container and obtained information that identified me and linked
me to Yastremskiy's cyber crime organization. I told Mr. Palomino
and Mr. Weinberg to investigate the torture and beating of
Yastremskiy and file a motion to suppress all information obtained
from Yastremskiy's encrypted containers and other fruits from that
seizure.

Mr. Palomino asked me if me or my family had the money to pay
for his expenses of traveling to Turkey to investigate and interview
Yastremskiy and other persons involved there. Mr. Palomino contacted
my Mother Mrs. Maria Gonzalez and asked her if the family had
money to pay for the expenses of a trip to Turkey to interview
witnesses. Mr. Palomino told my mother it was very important to my
case. My Mother told Mr. Palomino that the family had already

contributed a substantial amount of money toward my defense and that there was no more money to finance his trip to Turkey. (See Exhibit A, 2255 Motion affidavit, Maria G. Gonzalez ¶3 and ¶4)

After Mr. Palomino discovered that me or my fmaily could not pay for a trip to Turkey to investigate Yastremskiy's torture and beatings, Mr. Palomino told me that without an Affidavit from Yastremskiy he could not file a motion to suppress the evidence obtained from Yastremskiy's laptop computer. Mr. Palomino told me the evidence against me was very strong and that I would have to plead guilty in order to avoid a greater sentence.

Mr. Palomino was ineffective for failing to file a motion to suppress the information that was obtained from the encrypted container found in Yastremskiy's laptop computer that incriminated me and led to my arrest and conviction, that was obtained by means of the torture and beating of Maksym Yastremskiy. If Mr. Palomino would have filed a motion to suppress the evidence obtained through the illegal use of torture and beatings of Yastremskiy, the evidence would have been suppressed and the Government would have had no case against me and I would not have plead guilty.

**SEE MEMORANDUM OF LAW AND FACTS THAT SUPPORT GROUND NUMBER THREE ATTACHED HERETO.**

AO 243 (Rev. 5/85)

(e) On appeal __N/A__

(f) In any post-conviction proceeding ____Pro Se

(g) On appeal from any adverse ruling in a post-conviction proceeding _____
                                    N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☑ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☑ No ☐

   (a) If so, give name and location of court which imposed sentence to be served in the future: __U.S. Dist.__

   __Court, Boston Division, Judge Woodlock, 240 months and 1 day__

   __(concurrent sentence)__

   (b) Give date and length of the above sentence: __3-26-2010 240 months and 1 day__

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes ☑ No ☐      §2255 motion

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
                                    Signature of Attorney (if any)

This §2255 motion qualifies as a signed sworn affidavit.(28USC §1746)
I declare under penalty of perjury that the foregoing is true and correct. Executed on

__03/21/11__
   (date)

_____
                                    Signature of Movant

## Certificate Of Mailing

I, Albert Gonzalez, swear under the penalty of perjury that
I have mailed the Original and three copies of the foregoing
Motion under 28 U.S.C §2255 to the Clerk for the United States
District Court for the District of Massachusetts, Boston Division
United States Courthouse, One Courthouse Way, Suite 2300, Boston
Massachusetts. 02210-03002, by placing said §2255 motion in a legal
envelope with sufficient first class postage attached and placing
said envelope containing §2255 motion in the hands of Bureau of
Prisons Mail Room Officer at the Federal Correctional Institution,
P.O. Box 1000 Milan, Michigan 48160, this **2|** day of March 2011.
(28 U.S.C §1746).

Albert Gonzalez
#25702-050
Federal Correctional Institution
P.O. Box 1000
Milan, Michigan 48160